We'll hear argument next in Case 14-613, Green v. Brennan. Mr. Wolfman. Mr. Chief Justice, and may it please the Court, the basic principles of this Court's timeliness cases, Title VII and otherwise, is that the clock starts when the cause of action is complete. Because a constructive discharge claim is complete only after the employee resigns, this Court should reverse. The Court has indicated that limitations principles should be as simple as possible. The Tenth Circuit's rule, however, injects unnecessary complexity. Identifying the last discriminatory act in an alleged hostile work environment can be difficult. And as this Court said in Burlington. Scalia What does the statute say? Can we look at the statute? What does the statute say? The statute says matter grieve party has to bring within 45 days the matter alleged to be discriminatory. The matter alleged to be discriminatory. And is the resignation of the employee a matter alleged to be discriminatory? Absolutely, Your Honor. The matter. The employee discriminated against himself? No. The matter alleged is the whole of the claim. As the dictionaries say and as most of the lower courts say, the matter is just a shorthanded way of referring to the cause of action that the person is bringing. Here, the matter, and this is undisputed, is a constructive discharge, which as this Court said in Souters, has two elements, both the precipitating conduct and the resignation. Without both, there is no constructive discharge claim. Kennedy But for a constructive discharge claim to succeed, you have to point to a discriminatory or an unlawful act. And so we have to find this anyway. It is true that that is one component. There is no question that there are going to be, again, Souters said, there would be both precipitating conduct and the resignation. Both elements must be present for there to be a constructive discharge. But let's assume for a second that the matter alleged to be discriminatory is ambiguous in some sense. Then the Court should just go to its time-honored default rule. The default rule is that the cause of action must be fully formed before the limitations period is triggered. Scalia Of course, that rule is adopted for statutes that do not have a conciliation provision. What use is the conciliation provision once the employee has quit? Kneedler I think not, Your Honor. The conciliation process always anticipates that the claim will have occurred, that the acts giving rise to the claim, including all the elements, have occurred before conciliation. Scalia That's fine, but the employer can make it up, you know. It's they try to bring the employer and the employee together. Kneedler That is true, but only. Scalia But he's quit. He's gone. He's no longer an employee. What conciliation provision? Kneedler Your Honor, that is true for any of the acts that could be brought prior to the 45-day trigger. For instance, a termination would fit exactly the scenario you're suggesting. A termination, which after all is the analog to the constructive discharge, that claim cannot be brought into the conciliation process until it exists. So it's just that the first component of the process, what you're referring to, Your Honor, as conciliation, moves quickly into a more adversarial stages, and all of those stages presuppose that there is a cause of action that exists or a claim that exists. And again, that's quite consistent with this Court's default rule that the limitations period is not triggered until the claim is fully formed, and that's perfectly consistent with all of this Court's Title VII timeliness cases. If you look at, for instance, Evans, if you look at Ricks, at Ricks there was a fully I somehow feel you've given up too much. You can charge a discriminatory termination, correct? And that's the employer making a decision that he's going to fire you for reasons that are not legitimate, they're discriminatory.  Sotomayor, that discharge, that the moment that the environment has gotten so hostile that you feel overwhelmed and have to leave, isn't that the discriminatory act as well? So that that discharge itself is discriminatory because the employer has proceeded in a pattern that has led you to that decision? That's exactly right, and I did not mean to be retreating from that position at all. That's the two elements of the claim. So the resignation is part and parcel of the claim. You have the precipitating conduct and you have the resignation. Sotomayor, that's what I'm saying. I don't think, I think it's, you keep talking about it as two separate elements. Sotomayor, that's what I'm saying. Sotomayor, but when the resignation occurs, the claim is imputed to the employer. It's imputed to the employer. Scalia, they're not always the same at the same point. The employer could have been discriminating against this employee for years, and there's no additional discrimination for an entire year. But the employee has finally gotten fed up with it, and after a year, during which the employer has done nothing else discriminatory, he decides, I'm going to quit. Now, he'd still have a claim for, you know, discriminatory provoking of the quitting. But the time period for the discrimination and the time period for the quitting are a year apart. Well, that's certainly possible, but again, that would be the case in many situations. So, for instance, let's assume for a second that there had been a discriminatory demotion on day one, and then a year later there has been a discriminatory termination with perhaps the exact same motive. No one disputes that both of those claims are independently actionable, and no one disputes that their limitations periods have a different trigger date. Scalia, and quitting is not an act of the employer. The act of the employer, the unlawful act of the employer, is coercing the quitting. So you have to find an act on his part that coerces the quitting. That's quite different from the employer discharging the person for discriminatory. There are some differences, but the point is that the resignation, at the point of resignation, when the cause of action accrues and no one here disputes, that's when the cause of action accrues, that conduct is imputed to the employer. And it's not simply in the con ---- that's what this Court said in Souters, but it's not simply the purpose of remedy. Yes, it is. It's not simply for purposes of remedy. A cause of action for constructive discharge will be dismissed if the person is still on the job and is not resigned. It's part of the affirmative case. Kagan. Kagan. Kagan, you might be pulled in two different directions here, but you don't have to accept what Justice Sotomayor is saying to win this case, isn't that right? In other words, one could say, yes, if you had discriminatory act language, that might point to the last predicate, discriminatory act, as opposed to the resignation, it might or it might not. But here, that language doesn't exist. Here, the language is discriminatory matter. That refers to the entire claim. And when you refer to the entire claim, it's clear that the resignation is part and parcel of the claim. And it at least creates ambiguity such that the default rule would operate. So you don't have to go and say Justice Sotomayor is correct. I think that is true, that we have argued this in two alternative ways. One is simply that the cause of action is not complete until there is a resignation, and we think the regulation is clear, but even if it were not clear, the default rule kicks in and we win. But there is no question also that one of the premises of the constructive discharge, constructive eviction, constructive termination, as in the Max Schell case, there is no question that there is this idea that when the relationship is ended, that is imputed to the employer. Some courts have focused more on that rationale and others have focused more on our principal rationale, which is simply that the cause of action is not complete until the resignation occurs. Ginsburg. Why doesn't that mean that it's within the employee's ability to stretch out the time that he has? Because there could have been all this discrimination, and the employee stays on the job and then sometimes down the road decides to quit. Well, I think that is a concern in theory, but not in practice. In reality, there are no such claims, the claims would be so weak that those constructive discharge claims are not brought, and amicus cites no claims of that nature. And let me just say that in this case, the Court's decision in Bay Area Laundry, which applied the default rule, the same concern was raised, that the limitations period, the trigger, would be within the hands of the plaintiff. And the Court said, well, that may be so, but that's the way the statute was written, the limitations period was written, and so be it. And the Court also added that the plaintiff would have incentives to bring the claim as soon as possible, and that would, of course, be true here. If, in fact, the person could no longer take it, they would want to leave. They certainly wouldn't want to bring a weak claim that came years after the precipitating  Roberts. Not years, but, you know, maybe several months. I mean, you know, yes, you can't take it anymore, but maybe you also need a paycheck, or, you know, you're going to be eligible for the bonus in 6 weeks. You may as well at least wait until then. That is possible. There are most cases, most of the constructive discharge cases are brought promptly. Again, no one has suggested here, and there are many constructive discharge cases in the courts, that there have been any significant delay. Alito, may I follow up on Justice Kagan's question? You were discussing the possibility of deciding this case based on the particular language of the regulation that applies here. But your question presented is phrased much more broadly. You say, under Federal employment discrimination law. So I took that to mean that the rule that you are advocating would be the same for public and private sector employment. I think it would be, Your Honor, and I think so. I think this Court's decision would apply there or at least give significant guidance. The private sector. Alito, there is this matter alleged to be discriminatory, applies only to Federal employment. That is correct, but if I might, if I might extend my answer. The private sector statute talks about an unlawful employment of practice occurring. And again, in light of the default rule, even if there is ambiguity in that phraseology, in light of the default rule, I think it's very likely that you're going to have the same rule apply in both situations. Both of them seem to be describing the claim, the cause of action, what it is that the employee is complaining about. Alito, isn't it true that outside of the area of constructive discharge, and maybe constructive discharge is different, and I think that's really the thrust of your argument, but outside of that situation, there must be an act of intentional discrimination within the limitations period? Well, that is likely correct if by that you are rejecting the notion, again in my discussion with Justice Sotomayor, that the resignation is imputed to the employer. And that is, that is the case, Your Honor. Yes, but you're arguing that there's, because there's this imputation, it's different for constructive discharge. Right. But my question is, outside of that context, under Evans and Ricks and Morgan and Ledbetter, there must be an act of intentional discrimination within the limitations period. Yes, Your Honor, but let's be clear about what those cases stand for. Those cases do reflect the facts as you just stated them, but each of those cases, the trigger date was when the claim first became actionable, and that's the exact same rule we're asking for here. And let me again extend my answer to you, Justice Alito, which it is true that constructive discharge could be unique in the sense you're suggesting in the Title VII case, in the Title VII area, but let's remember that constructive eviction, constructive business termination are treated the exact same way. Your Honor, I do want to go back to some of the practical implications. As I began saying, the Tenth Circuit rule would inject unnecessary complexity. By contrast, the date of resignation is easy to identify. Most administrative claimants are laypeople and are unlikely to be cognizant of the last act rule posited by the Tenth Circuit. Reasonable intuition, that is, common sense, will tell an employee that I cannot and certainly need not bring my claim that I was forced out before I was actually forced out. Roberts. Well, but I think the government suggests that this is exactly a case where it's not so easy to figure out when the constructive termination was. When the resignation occurred? When the resignation occurred. Well, let me just say, Your Honor, on that score, no one disputed that issue below and. Well, that doesn't mean it was easy or hard. No, well, Your Honor, I think it does mean it was easy. Every the all the parties below, the administrative decisionmaker below, and the Tenth Circuit below, all held that that all indicated that my client resigned on February 22nd. Well, you know, the case, you know, someone says this is ridiculous, I can't take it anymore, I will resign in three months. I mean, what is the date of constructive termination then? Well, if the rule is a definitive notice of resignation, I think the government agrees with that. And so if you hand in a letter or you state I am going to resign on Friday or next Monday, the trigger date would be the date. No, he says, I interpreted the Chief Justice's question maybe wrongly. Suppose he says this is not on mine, I can't take it anymore, three months from now I'm going to resign. I think that the trigger date would be that date. When he resigns? When he resigns?  The date that he says it to himself or the date that he does resign? Oh, was the Chief Justice positing something going on in the mind of the plaintiff? No, no. It's, you know, I think it's fairly common for people to set a resignation date at some point in the future. You know, a schoolteacher will say as soon as this school year is over, I'm out of here. I think the date of resignation is the date the teacher says that. There's no causation yet. There's no causation. You've been arguing to us you can't have the statute running until there's a cause of action. There is a cause of action because there's been a resignation, definitive notice of resignation. It's true that the person is still on the job. He's still getting paid. That is correct. But the person has resigned, and the lower courts are saying he hasn't resigned. He's given notice of his intention to resign three months from now. I don't believe that the Court wishes to adopt a last day of work rule, that obviously would benefit the client. No, I'm just adopting the rule of what he says. If he says I resigned, he's resigned. If he says I will resign in three months, he doesn't resign until three months. We believe that when someone, for instance, hands in a letter and says my last day of work, I resign, my last day of work will be Friday, that that constitutes a resignation and that our rule is definitive date of resignation. If the Court wishes again to adopt the last day of work rule, that would obviously benefit my client, but it is not necessary. I would like to reserve the balance of my time. Roberts. Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court. We agree with Petitioner that the period for initiating administrative consideration of a constructive discharge claim should begin when the employee gives notice of resignation and not when the employer commits the last act which might or might not lead to that resignation. And if I can turn to the colloquy that the Chief Justice and Justice Scalia were just having with my friend, we think one of the virtues of this rule is that it leads to the same result in both cases of actual termination and cases of constructive termination. This is what's going to happen. The EEOC may well do that, Justice Alito. The same question is going to present itself with respect to, we think materially the same question presents itself in the non-Federal sector where the statute, as has already been discussed, refers to when the allegedly unlawful employment practice occurred. And the EEOC has construed this portion of the regulation as being effectively the same as the rule in the non-Federal sector. And the rule that we're asking for is this Court's rule from Ricks. It's the exact same rule, this rule about being when definitive notice is given for a termination, Justice Scalia. You were saying that when somebody says, I quit, my last day of work is three months from now, therefore, he hasn't actually quit. That's Ricks. The Court concluded that when the employer there said, you have been denied tenure, here's your terminal contract, you will be working here for only one more year, that the relevant date was the date on which the operative decision had been made and it had been communicated to the employee. And so we think that the rule should be the same for cases of actual discharge or constructive discharge. Kennedy. But Ricks alleged only discrimination, not discriminatory, not constructive discharge. That's true. There is a difference here. That's why I have a problem with Ricks. I mean, I don't think Ricks reads directly on what you're saying. You want to have an extension of Ricks. We're trying to say that we think that the same rule should apply to actual and constructive discharges, and it is a rule that is date of notification rather than date of separation. And that's the rule that everybody applies on the termination side. It's the rule that most of the courts of appeals have applied in the discharge side. In the context of terminations, only Justice Stevens suggested that we should be using the actual date of separation in Ricks' case. But again, as Justice Scalia points out, there's a difference between the employee taking the action and the employer taking the action. We agree that there's not. And that distinguishes Ricks. That does make this case different. That's why this isn't on all fours with Ricks. And we do think that you have to make the decision that you want to apply the same rule across to the constructive discharge context. But we think the reason you would do that is precisely because, as the Court acknowledged in Souters, a constructive discharge requires both an employee's decision to resign and the precipitating conduct. And until both of those things have happened, there is no constructive discharge. Nobody can say I have been constructively discharged until both of those things have happened. Scalia, when you say it requires both a decision to resign, it requires a resignation. I mean, that's the problem. I was just quoting the Court's decision in Souters, Justice Scalia. We weren't discussing this very issue. Well, we were discussing, the Court was discussing when a constructive discharge was actionable. And so we do think it's not just the decision in the employee's head. We think that the decision has to actually be communicated. And so this is one reason why, actually, this wouldn't interfere as much with the concern for counseling and conciliation that you were discussing with my friend, which is that, as in cases of termination, it could be that everybody knows that the discharge has happened. It's a constructive discharge or an actual discharge. Everybody knows when the employer says, you're fired, your last day at work is 14 days from today, same thing when the employee says, I'm giving my notice, I quit, my last day is 14 days from today, at that point, whichever one has happened, the employee can go and initiate counseling. He may not be out the door yet. There may be a resolution that happens. If he does end up going out the door, counseling can happen afterwards. But he doesn't have to initiate counseling before this happens. There's a 45-day period. Scalia, he's resigning. I mean, all the employer knows is, you're leaving at the end of this term of school. Or you're leaving in 3 months. That's all the employer knows. And in our view, when he's given notice, I'm leaving in 3 months, he then has 45 days to initiate the counseling with the agency counselor. He doesn't even have to specify in his notice of quitting that he is quitting because of discriminatory action. He doesn't even have to specify. That is generally true in the rest of the doctrine. That has nothing to do with the statute of limitations. The EEOC will ask, did you tell your employer this is why you are resigning? It will be something that will make it more difficult to prove his case. But we don't I think whether he has to say that or not has a lot to do with when the effective date ought to be, it seems to me. Well, we think that the reason that this counts as being an act that should be imputed to the employer is because it is forced by the circumstances. And we think that the doctrine itself is self-limiting. It limits the time period between when the employee is able to suffer the consequence of what the employer does to him and then actually say, I can't take this anymore, because as the Court held in Souters, the employee is going to have to prove that the situation was intolerable. But he doesn't have to say that. He doesn't have to say that on the day. He just has to quit or say, I'm quitting at the end of this term of school, and then later say, oh, the reason I quit was, it was I just couldn't take it anymore. Right? And he has to do that within 45 days. Within 45 days after when? After the date. After his giving the notice. After the date of notification. Just as, as I was saying before, just as if it were when the employer said, you're fired, your last day of work is two weeks from today, the clock is ticking, that's the rule from Ricks, we think it should be the same rule here. And we think that the reason why this is called a constructive discharge is right there in the phrase, is pregnant with the idea that this is an action that is being imputed to the employer. And so, although it is true that unlike the regular, the other claim of discrimination that Justice Kennedy was mentioning before in Ricks, although the employer has not actually done something necessarily during the limitations period, the new act of discrimination that we think is relevant here is the act of the employee, and it's one that it's called a constructive discharge precisely because it is not actually a discharge. It is instead an act of the employee that is a resignation, but it is treated in law as a legal fiction as if it is a discharge. And we think that that's, that that squares the circle here. And we'd like to see that. Scalia, I would, I would take the term constructive discharge to refer not to the acts of the employer that force the quitting. Even though the person hasn't been discharged, you have constructively discharged him because you've made his life miserable. I, I take the point, Justice Scalia, but that's not enough to allege a constructive discharge. Until the employee actually says, I'm quitting, there has not been a constructive discharge. And so, just because an employer, and, and this, this may be what Justice Sotomayor was asking about before, but we think that. Ginsburg. That works the same way with eviction and other cases where you have constructive, that the person has to act. That's, that's, that's correct. And we think the constructive eviction case is a very close parallel, and it shows that it's, it's unusual, but not unprecedented, that the plaintiff might be the one that actually controls when the clock starts on the statute of limitations. And take the case of a constructive eviction. If somebody wants to bring a claim for a breach of the covenant of warranty, that's a claim that doesn't start until the tenant has been evicted, either actually or constructively. And so, there's some choice there of when, when. Sotomayor. What do you mean constructively? I don't understand. Constructive, can't you bring a claim of constructive eviction while you're still occupying the premises? It's, it's, that's, that's one version of constructive eviction. Under, under the more classical version of constructive eviction that came up in cases involving breach of the covenant of warranty, the eviction would be constructive because no one actually came and forced you out. Instead, you just yielded to a superior claim of paramount title, and that was your choice of when you decided you weren't going to fight this anymore. But, in fact, you don't have to get out. I think you had not yet been. You can bring a claim against your landlord for a constructive eviction while you're still occupying the premises. Well, the Court recognized in the Max Schell decision that that's more of an innovation that, that, that wasn't the way this was classically handled, and, and, and Max Schell said that it thought that there wasn't a constructive termination of a franchise until the franchise had actually, until somebody had actually walked out and analogized it to both the, the classical cases of constructive eviction and this case of constructive discharge. We think that it's clear that if the employee says this would be bad enough for me to resign, but I'm not going to resign, I want to bring a claim for constructive discharge, he couldn't do that. He could, he could say I've been discriminated against. He said, he could say there's been a hostile work environment. But we do think in disagreement with, with, with my friend, the, the Court-appointed amicus, we do think that these are, these are two different claims, and the Court's opinion in Souter's indicated that there's a distinction between, for instance, the underlying claim for a hostile work environment and then the more aggravated claim of a constructive discharge for a hostile work environment. Kagan Do the predicate acts have to be independently actionable or not? I don't think that they have to be. In most cases, they will be. We, we take that point. It's probably going to be an unusual case where you can bring a constructive discharge and nothing else. The paradigmatic case is the one that the Court was hypothesizing in Souter's, where you have a hostile work environment, where there are lots of things that would have been actionable as discrimination, but they wouldn't necessarily have warranted quitting, and then the employee says, this is too much, it's crossed the line, I'm quitting. That second claim we think is a new claim. That's why the Court described it as a second, as an additional, as a graver claim. And in the discussion of amending the complaints that, that the amicus invokes in the EEOC's management directive, the reason why the Court of Appeals and the amicus can say that the employee could always just amend a timely complaint about the underlying discrimination and add a claim for constructive discharge is because the EEOC considers this to be a new incident of discrimination, but you can actually amend a pending complaint because it's related to what went before. But the reason why you have to amend the complaint is because it's a new claim. It's not just evidence that's relevant to damages for the underlying discrimination. There's, there's, the employee is going to have to prove that he's made a decision to resign, and also that the reason he did so is because the situation was so intolerable that, that he was left with no other choice. But that's. Ginsburg. Can you explain the difference between your position and the Petitioner's? Why do you date the constructive discharge from, what is it, December 16th? Yes. And so I take it you're, you're talking about the factual question. I don't understand this as having a disagreement about the legal question. But with respect to applying the rule to this case, the difference is that we think that the settlement agreement that Petitioner signed on December 16th, which is the relevant clauses are reprinted at pages 60 and 61 of the Joint Appendix, manifested his unequivocal notice of his intention to resign. We think that satisfies the rule that both of us are talking about here. We don't think that's the way we think the agreement reads, Justice Ginsburg. The first two sentences of the clause that is, it crosses the page from 60 to 61 say, Mr. Green agrees to retire from the Postal Service no later than March 31st, and Mr. Green agrees to take all necessary steps to affect his retirement by that date. But then read on. The next sentence says, it doesn't say Mr. Green has an option of not retiring if he decides to change his mind and then report for duty. It says, if retirement from the Postal Service does not occur, that he will report for duty in the station until he's already retired. Alito, what would you have done? Throw him out? Wouldn't you have allowed him to take that job at the lower pay? You mean he had not taken all steps necessary to affect his resignation by March 31st? Then we think he would have been in breach of the agreement. I'm not sure what would have happened then, but the reason this sentence is in the Postal Service or in particular the OPM takes the agreement says, if he hasn't taken all the steps, if it does not occur, Mr. Green will report for duty in Wyoming. And it doesn't say that he has a choice of doing that. He will have already breached the second sentence if he decides not to retire. Why not have the second sentence there? Pardon? Why have the second sentence there at all? Why are you giving him an option if he hasn't retired? We do not read this as giving him an option. We read this as responding to the Court's opinion. This wasn't reached by the court below, correct? This was reached by the district court. It was an alternative holding by the district court. The Petitioner did not appeal that alternative holding. And so in the court of appeals, the court was just considering the antecedent question of whether we should only look to the act of the employer or also the act  And so this factual question didn't actually come up before the court of appeals. We noted in the statement of facts in our court of appeals brief that the settlement agreement included his agreement to retire. But otherwise, we did take the case on his premise, and the court of appeals did not address this. So we do think that it would be appropriate for the court here, if it agrees with us, that this agreement is sufficiently clear to say that Petitioner will lose on the facts of this case. If you want to remand and have the court of appeals consider whether the district court was corrected reaching that, that would also be appropriate. But we think that this wouldn't be that different from what the court did in Irwin, where in Irwin the court said, well, the court of appeals was wrong about finding that there was no possibility of equitable tolling. Nevertheless, there is no way he will ever satisfy equitable tolling on the facts of this case, so he loses. And I do think that one final thing I would like to say is that the court should be able to take some comfort from the real world evidence that we have. It's not much. We don't have evidence of cases from the five circuits that have adopted a version of the notice of resignation rule between 1987 and 2000 that indicates that employers are being besieged with stale discrimination claims that are being revived by employees' attempts to quit some months or years after the fact. And so we think that it doesn't present those concerns. Sotomayor, I'm a little less moved by that, because from my personal experience those stale claims generally don't make it past the motion to dismiss. Very few of them are appealed, because if they're really that stale, those constructive discharge claims are usually thrown out. The case is litigated on other grounds. Well, I think that's right, and I think that but it's also the case that in many cases, in fact in most cases, there isn't going to be very much time between these two dates, and therefore it usually isn't going to be that dispositive. In this case, we think that the things happened on the same day. Even under Petitioner's approach, he had some weeks to make his decision, but the reason why he wasn't prejudiced by being able to take some weeks to make his decision is precisely because he was using annual leave, he wasn't suffering the consequences of a hostile work environment, he hadn't taken the pay cut, he hadn't had to move 400 miles away. And so this was an unusual case where he would have been able to take that much time. And so it looks like, in practicality's sake, that it hasn't made a big difference. And that's why we think it would be useful for the Court to say this is effectively the Rick's rule. It should apply to both cases of actual and cases of constructive termination. If there are no further questions, we would urge the Court to affirm. Roberts. Thank you, counsel. Ms. Carroll. Mr. Chief Justice, and may it please the Court, we agree that the Rick's rule should apply here as it does to any other kind of claim under Title VII. And like any other kind of claim under Title VII, a constructive discharge claim has to challenge actionable conduct by the employer. In applying the EEOC's regulation here, we have to ask what was that actionable conduct, that matter alleged to be discriminatory, and when did it occur? Well, you just sort of made those two synonymous, but they don't have to be synonymous. A matter might mean the claim, not the particular discriminatory conduct that's the predicate for the claim. Justice Kagan, I think that the EEOC has, by equating the Federal sector provision with the private sector provision, has suggested that both of these provisions do focus on the alleged unlawful employment practice. In addition, when the EEOC promulgated this rule in its current form, it explained that this rule, quote, continued the rule that had applied under the prior version, which used the language alleged discriminatory event. So I don't think the inclusion of the word matter by itself makes a difference. After all, it doesn't just say matter, it says matter alleged to be discriminatory. And we think that has to be read as a whole to clearly focus on what is it that is the target of the claim. And that language is does not become ambiguous just because it might be challenging to apply it in a particular fact pattern. I think this Court's decision in Morgan is an excellent example of that, where the Court said we have a clear rule that requires us to identify what was the alleged unlawful employment practice and when did it occur. That's the analysis here. Kagan.  Kagan. Kagan.          Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And when there is this composite set of things that has to go on before a suit, it seems to me that it's at least approaching the kind of possible ambiguous stage to say, yes, that's a matter, that's a practice, that both of those things have to be part of it. I think that that's difficult to reconcile with how Morgan treated the word practice, also bearing in mind that as the Court has explained in a case like Graham County, for instance, the kind of ambiguity that triggers resort to a default accrual rule is ambiguity in the literal text of the provision. There it was unclear whether a particular limitations period even applied, and the Court said literal text is ambiguous, there are clues that point in one direction. We think this default rule points in the same direction. But the Court hasn't applied that background rule to override language that's otherwise clearly calls for an analysis of, in this case, what is it that the plaintiff alleged to be discriminatory? Here, Mr. Green alleged a discrete act of retaliation that he says occurred in December of 2009. He alleges no repeated or cumulative acts of discrimination subsequent to that date. And certainly the plaintiff's claim is that he has not had a repeated act of discrimination. Ginsburg-McCarran, Jr.: But what about that he hasn't got a claim? He can't even come to court with a claim for constructive discharge until you've said, I'm discharged. So you're suggesting that the time runs from a time when he does not yet have a ripe claim. Well, he does not have a ripe claim for constructive discharge. He would have a ripe claim for discrimination or retaliation to challenge the underlying predicate acts. But then are you saying that constructive discharge will lead to a cause of action only when it is so close to the precipitating event that they are almost contemporaneous? I'm not 100 percent sure I followed the question, but let me... When, under your view, when is there constructive discharge that itself leads to triggering the statute of limitations? I think in a constructive discharge case, and to be clear, that label can be applied to a range of different fact patterns, it will often be the case that the predicate conduct that precipitates the resignation is itself alleged to be discriminatory. Take the facts of Souters, for instance, where there was an ongoing pattern of harassing behavior, individual acts contributing to that hostile work environment had occurred leading up to, and indeed on, I believe, the very day of the resignation. There, I think, it is, as Your Honor suggests, not going to matter at all which rule the court were to decide to adopt. They're almost contemporaneous. They would be contemporaneous. But in a case like this, it's much clearer to see the conceptual distinction between Mr. Green's own individual independent decision to resign and his employer's predicate discriminatory conduct. And in Souters, the court made very clear that those were two distinct components of a constructive discharge claim. And I think, you know, the Petitioner and the government's position asks the court to extend the legal fiction that equates constructive discharge. Breyer The matter complained of here is a constructive discharge. In a tort suit, or many, the matter complained of is negligent behavior leading to an injury. I take it in a tort suit, the statute of limitations doesn't begin to run until there's harm. I think that's generally true of tort suits. That's generally true in a tort suit, and my guess is in a contract suit, for breach of contract, if the contracting party sent the ships out and you knew that it wouldn't be delivered, it's not actionable until it isn't delivered, and I guess there are ways around that. But my point is generally in the law, where the matter complained of is a certain kind of incident in the world, negligence leading to harm, action of injury, and the sort of discriminatory, et cetera, nature that leads to a discharge, normally the statute of limitations begins to run when the harm occurs. Now, why should it be any different here? Anderson In this case, the discrimination, the retaliation, I should say, that was challenged was the forcing of Mr. Green into the settlement agreement in December. He alleges that that was retaliatory, and he was harmed by that at that time, and he could have promptly initiated counseling on that complaint. Now, it is true that as a consequence of that discriminatory, retaliatory conduct, the stakes got higher for him at a later point when he decided to do it. Breyer Of course, he could have, but we're talking about only the constructive discharge part. I mean, sometimes defendants do seven bad things at once, or at least allegedly bad. Anderson That's correct. Breyer And we're only talking about one of them. The one that we're talking about is the constructive discharge claim. So I go back to my question about negligence, because that was the first course I took in law school, so I remember that. But the fact is, why should we treat this any differently? Anderson So in general, we don't think this should be analyzed any differently than any other kind of claim, which is that we have to identify what is the alleged unlawful practice and when did it occur. Why is that? Because Breyer You can't. As you said, in a tort case, it's not just that the person behaved negligently, but that negligence had to result in a harm. And so I'm just the only simple-minded analogy I'm drawing, and I wonder why it doesn't work. Anderson I think it does work, because in this case there was retaliation alleged in December that harmed Mr. Green at that time. He later suffered a more painful consequence, which under Ricks does not trigger a new statute of limitations. But I want to go back to Alito Suppose there was evidence that the employer had a continuing intent to force Mr. Green's resignation. So you've got e-mails that say, Mr. Green is causing trouble for us by charging us with discrimination. We're going to do A, B, C, D, and E to force him to retire. And then on the day when he quits, there's another e-mail that says, hallelujah, we've achieved our objective, he's retired. Now, when would it run in that situation? Wouldn't it run from the date of discharge, because there would be an intent as of that date? Anderson If I'm understanding the hypothetical correctly, that sounds to me like a case that would be analyzed under the Court's decision in Morgan, where you have an environment of hostility that is composed of many individual acts, some of which might not be independently actionable in and of themselves, joined with a discriminatory intent. Alito Well, let me clarify it. So nothing more is done. There are all these acts up to a certain point, and then 45 days, 50 days pass, and the employee resigns. But the employer has all along had the intention of forcing the resignation. So on the date of the resignation, the employer intends to cause a discharge for a discriminatory reason. Anderson I still think Morgan answers that question, because Morgan says there has to be an environment that occurs within the 40 — within the charging period. And that's the exact same analysis whether on the 46th day the employee decides that's it, I quit, or if he simply decides that's it, I'm finally going to speak up about this hostile work environment that's been going on. It has nothing to do with construction. Breyer That's — now I'm getting this more clearly, because your response to my question, which is in our relevance to this, too, is, look, the plaintiff was hurt on the very day that last act was performed. Indeed, he suffered because he saw the act being performed. And that was one of the things that led him later to quit. So let's count that as the injury, and let's count the whole thing complete as of that time. That's basically the argument for your side, I think. And now the argument against you is that's going to be a nightmare, because there will be, in fact, a whole range of acts, a whole series in many cases, and we'll then, in order to run the statute of limitations, have to get into the question of which of those acts — maybe there were some he didn't know about — which of those acts actually did produce harm and which did not. And he just really won't know when to bring his lawsuit as compared with the comparatively simple thing. He quits. Right. I understand that contention, but I think that the so-called difficulty is no different than the difficulty so-called that would arise in a hostile work environment case where there was no resignation. You would still have to figure out what were their acts within the 45-day period that contributed to the environment. Maybe that's going to be difficult on some facts, but that's a result of this Court's decision in Morgan. Again, nothing to do with constructive discharge. Now, with respect to the court's case, I think that's a good point. Kagan But there's something more than just simplicity, which is, you know, suppose you had a case where somebody is first demoted and then somebody is fired. You would never say, oh, he was demoted, he suffered the injury then, it just raised the stakes. You would say, no, there's two independent things, and now he can bring a termination claim. That's right. And the power of the constructive discharge claim is to say the exact same thing really has happened here, that once you lose the job, it's more than the stakes have been raised, it's that there is a separate injury that then becomes legally actionable. Well, the analysis when there's a demotion followed by a termination is not simply that there's been a second separate injury, but that there's been a second separate violation of Title VII by the employer. That's why it is a discreet, unlawful employment action triggering a fresh limitations period. In constructive discharge, you know, the analysis that the second separate event, the employee's decision to resign, is itself the actionable thing. That is the analysis that the court of appeals had applied in suitors. In suitors, the question was, do we treat constructive discharge as a tangible employment action for purposes of determining vicarious liability? The Third Circuit said, well, yes, we treat these as equivalents for all intents and purposes. So naturally, when there's a constructive discharge, that means there's been a tangible employment action. This Court rejected that analysis and said, no, the legal fiction does not extend that far. To be sure, the Court says, we treat those two as the same for remedial purposes, in the sense that an employee who has been constructively discharged can recover for that to the same degree and to the same extent as if he or she had been actually discharged. That makes sense, because you have this background duty to mitigate, and in the circumstances of a constructive discharge, we don't think the employee should be tagged with the so-called fail-to-mitigate damages, but that's the purpose of the legal fiction  Kagan But if we're going to say, yes, these are different, and for some purposes we're going to look to the fiction, and for other purposes we're not going to look to the fiction, it seems to me as though here it makes sense to take account of the fiction, in the sense that the person cannot bring a claim until the resignation has happened. So that's the kind of paradigmatic case in which, boy, there's something really powerful pushing that, yes, you should recognize the constructive discharge as a discharge in this case. But the limitations period here does not run from the accrual of the claim. It runs from the time of the matter alleged to be discriminatory, the unlawful employment action. And as this Court explained in Souters, the constructive discharge entails both predicate discrimination, and we do think it has to be independently actionable. We think the Court recognized that when it said in Souters that for Ms. Souters to prove her hostile work environment claim was, quote, a necessary predicate to her constructive discharge claim, and that's also the uniform holding in the courts of appeals. There has to be predicate, unlawful conduct by the employer, and a subsequent decision by the employee to resign. When you have a provision that singles out, as the start of the limitations period, one of those two components, then the fact that the claim hasn't accrued yet is not something that the Court can rely on to override that clear language. I think this Court's decision in Pillsbury is a really excellent example of that, where under the Longshoreman's Act, there was a limitation provision that ran from the time of injury, and the plaintiffs pointed out, well, but we can't actually recover compensation for our injury until a disability has manifested. So we should say that we should interpret injury to mean disability. And the Court said, well, no, I mean, it's true that that will run the limitation period before the claim can accrue, but the language says what it says. For what it's worth here, I don't think that this reading is actually going to cut off claims, except in cases of, you know, real lack of diligence, because here it's not the case that there's no claim available after the initial act of discrimination by the employer. There is a claim available. The employee can initiate counseling on that, and as a matter of the conciliation policy, he or she ought to do that promptly in order to bring about the best chance of a prompt and informal reconciliation. Scalia. The language we're focusing on here is the language of a regulation. What statutory language does that regulation implement? The cause of action for federal employees in 2000E16C, if I have that right, requires that it extends a cause of action to federal employees who've been aggrieved by the final decision of an agency that has been produced through this administrative process that is all a design of EEOC regulations. So there, unlike in the private sector provision, the charging period here is purely a creature of the regulation. The time limit that exists in the statute on the federal sector side is only the time limit for bringing the lawsuit once you have been aggrieved by the final agency decision. Roberts. You say this isn't going to be a problem much. I think it's going to be a problem a lot of times. If people are in jobs and they're, you know, suffering this particular type of adverse work environment or discrimination, but quitting your job is a very big deal. I think you have to plan out when that's going to be, and just because you can't take it anymore doesn't mean that you could quit work right away. But this rule doesn't require you to quit in order to be able to raise and seek resolution. Oh, sure. It doesn't require you to quit. It just requires you to tell your boss, you know, I can't take this anymore, and now I've got to conciliate with you, but, you know, it creates complications in the workforce if you raise that type of issue. It can. I mean, to be clear, the EEOC regulations require that this must be all done anonymously until the complaining employee says, actually, please go ahead and tell my employer so that we can try to pursue alternatives. I suspect most employers can figure out who's complaining in these types of situations. Well, be that as it may, I think the policy underlying this provision is the recognition that the purpose of all of this is to try to prevent discrimination and to correct it as soon as it has occurred. It's unquestionably a very short provision, and the Court recognized in Morgan that this very short provision exists because of the recognition that we want these sorts of alleged discriminatory or retaliatory circumstances to be addressed right away. There are safeguards built in. This provision, I think probably unique among statutes of limitations that I know of, actually mandates that it be extended if, for example, the employee didn't know about the time limit or didn't know, didn't have a reasonable basis to suspect discrimination. What is your position on the government's stance? On the legal question or the factual? Factual question. We haven't taken a position on that because the Court of Appeals didn't find it necessary to do so. You know, we think it's an example of the difficulty of trying to figure out when the last act kind of thing. Well, to the contrary, I think their dispute has arisen because they're trying to apply the date of resignation rule and are finding it difficult to agree on when that resignation occurred. As I said earlier, I think in our under the rule that the Court of Appeals adopted in this case, we think it asks the court or the agency to engage in precisely the same inquiry that it would have to do whether even if there had not been a constructive discharge. It's still in every case about identifying what is the alleged violation of the statute and when did it occur. Ginsburg What do you do with suitors that seem to distinguish two things? One was the hostile environment, and the second was the constructive discharge. And the Court said that that, that the hostile environment is a lesser included component of the more serious constructive discharge claim. May I respond? I think suitors recognized that Ms. Souters had to prove up both pieces. She had to prove unlawful conduct by the employer, namely a severe and pervasive change in the terms and conditions of her employment amounting to a hostile work environment, and she had to meet the constructive discharge standard. And if the Court's intent in saying so had been to equate constructive discharge with actual discharge for all intents and purposes, then I don't see how the Court could have come to the conclusion that the affirmative defense is, is ever available. Thank you. Roberts, Mr. Wolfman, four minutes. Wolfman Your Honor, if I might, I would like to begin where we ended. Souters considered and then recognized a claim for constructive discharge. What we would call in the old days a cause of action. At pages 142 and 143, the Court said it was considering whether a claim for constructive discharge lies under Title VII. And then it holds, we agree with the lower courts and the EEOC that Title VII encompasses employer liability for constructive discharge, not simply damage enhancing, but liability for constructive discharge. I do want to turn to, Mr. Chief Justice, to your question about the government's position on the date of resignation. It is not entirely correct that the Tenth Circuit did not address this. At Petition Appendix 2A, here's what the Tenth Circuit said, that shortly after being put on leave, he signed a settlement agreement under which he would choose either to retire or to work in a position that paid much less and was about 300 miles away. That was the premise on which the Sotomayor I'm sorry, that's true, and that's why I thought that was an open question. But the government, Mr. Gannon says that in fact the district court said that you chose to retire in December. And you didn't appeal that finding by the district court. That is not correct. The district court was of two minds on the question. At one point it indicated that his agreement was a resignation. At another point, and this is in our reply brief, the district court said the exact opposite. It said what the Tenth Circuit said. And the district court opinion, its legal ruling, is not premised on that, what the government is saying is a finding. Now, let me also say that the EEO decision in this case, that is the Postal Service itself, said, this is at the Joint Appendix 23, a fair reading of the agreement reveals that he was given the choice to retire or to report to a new job and was allowed to continue his career, unless the Court has anything further. Breyer. What is your response to her? I think she's saying in most of these cases there is a hostile work environment. Where there is a hostile work environment, you have 45 days from the last act. And so what we should do is look at this injury as simply one more injury caused by a hostile work environment. And just as you don't look at the date of injury, you know, there, you look at the environment, et cetera, so do the same thing here. It's simpler, et cetera. There are two answers to that, Justice Breyer. First of all, I do want to challenge the premise of the seven illustrative cases cited in Souters, illustrative for constructive discharge. Three of them were stand-alone constructive discharges untethered to any other claim. That's number one. Number two, even if you have what this Court in Souters called a subset of constructive discharge cases, that is, one arising out of a hostile work environment, they are still distinct claims. That's really the point of Souters. They're distinct claims. They're separately actionable, and we know they're separately actionable because the constructive discharge claim is not actionable until resignation. Unless the Court has anything further. Roberts. Roberts. Thank you, counsel. Ms. Carroll, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility, for which the Court is grateful. The case is submitted.